UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRIDGET KRIEMAN, et. al. | ) | |
| | ) | |
| Plaintiffs, | ) | No. 05 C 0348 |
| | ) | |
| vs. | ) | Judge Joan H. Lefkow |
| | ) | |
| CRYSTAL LAKE APARTMENTS ) LIMITED PARTNERSHIP, et. al. | ) | Magistrate Judge Ian H. Levin |
| | ) | |
| | ) | |
| Defendants, | ) | |

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT**

## I. Introduction

The "Facts Stated In A Light Most Favorable To Plaintiffs" section in Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment ("Defendants' Memorandum") paints a fairly damning portrait of discrimination, but Defendants fail to see anything wrong with their actions. Ever since Danca became the Manager of Crystal Lake Apartments and began her practice of discrimination and retaliation, Defendants failed to find anything wrong with what she did.

Defendants' statement that "there is no direct evidence that can be interpreted as an acknowledgment of the defendants' discriminatory intent" is indicative of their failure to grasp the concept of discrimination. Yet it is hard to imagine a stronger statement of discriminatory intent than Danca's use of the word "nigger" in reference to Anthony Krieman.

Once a plaintiff has presented *prima facie* evidence of housing discrimination, either through direct or circumstantial evidence, "'summary judgment for the defendant will ordinarily not be appropriate on any ground relating to the merits because the crux of a [discrimination claim] is the elusive factual question of intentional discrimination.'" *Harris v. Itzhaki*, 183 F.3d

1043, 1051 (9th Cir., 1999), (quoting *Lowe v. City of Monrovia*, 775 F.2d 998, 1009 (9th Cir., 1985), *see also, Kilty v. Maple Grove Condo. Ass'n*, 101 F. Supp. 2d 1041, 1051 (N.D. Ill., 2000)("[T]he ultimate issue of "discriminatory intent is a question of fact....")

## II. Defendants Violated 3604(c)

Defendants state: "Nowhere do plaintiffs allege defendants made or caused to be made any printed discriminatory materials or any other conduct in violation of §3604(c)." (Defendants' Memorandum at 16). However, §3604(c) of the Fair Housing Act ("FHA") reaches more than "printed discriminatory materials," providing:

> It shall be unlawful:
> * * *
> To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation or discrimination.

42 U.S.C. §3604(c).

Section 3604(c) is not limited to printed materials. See, e.g., *Mayers v. Ridley*, 465 F.2d 630, 633, (D.C. Cir., 1972) (per curiam, Wright, Bazelon and Robinson, JJ., concurring) ("Unless the words "notice" and "statement" are to be treated as surplusage, they must mean that the Act prohibits at least some communications which cannot be classified as advertisements."). The regulations promulgated by the United States Department of Housing and Urban Development[1] explicitly state with respect to 3604(c) that "The prohibitions in this section shall apply to all written or oral notices or statements by a person engaged in the sale or rental of a dwelling." 24 CFR §100.75(b) Courts have consistently held that 3604(c) covers oral as well as written statements. *See Jancik v Department of Hous. & Urban Dev*. 44 F.3d 553, 556 (7th Cir.,

[1] [HUD's] interpretation of the [FHA] ordinarily commands considerable deference." Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 107, (1979). See also *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 210, (1972).

1995), *accord, Soules v United States Dep't of Housing & Urban Dev*. 967 F.2d 817 (2nd Cir., 1992); *Harris v. Itzhaki* 183 F.3d 1043, 1054 (9th Cir., 1999); *Burnett v Venturi* 903 F Supp 304, (ND NY, 1995); *Heights Community Congress v Hilltop Realty, Inc*. 629 F Supp 1232 (ND Ohio, 1983) *affd in part and revd in part on other grounds* 774 F.2d 135 (6th Cir.), *cert. den.* 475 US 1019, 89 L Ed 2d 318, 106 S Ct 1206, *see also Gorski v Troy*, 929 F.2d 1183 (7th Cir., 1991) (holding that the tenants had standing to maintain an action against the landlords for, *inter alia*, expressing a preference on the basis of familial status in violation of 42 U.S.C. §3604(c)), *Ores v. Willow West Condo. Ass'n.*, 1996 U.S. Dist. LEXIS 2912 (D. Ill. 1996).

The test used to determine whether a statement is discriminatory is whether it suggests to an "ordinary listener" that a particular protected class is preferred or "dispreferred" for the housing. *Soules v. United States Dep't of Housing & Urban Dev*., 967 F.2d 817, 824 (2d. Cir., 1992). The key word in §3604(c) – "indicates" – means that provision is violated if a notice, *statement*, or advertisement indicates discrimination to an "ordinary reader" or "ordinary listener". *Janick v. Department of Housing and Urban Development*, (7th Cir., 1995). The "ordinary listener" is "neither the most suspicious nor the most insensitive." *Ragin v. New York Times Co*., 923 F.2d 995, 1002 (2nd Cir., 1991), *cited with approval by Jancik* at 556.

"[N]o showing of a subjective intent to discriminate is . . . necessary to establish a violation of [3604(c)]". *Jancik v. Department of Housing and Urban Development*, 44 F.3d 553, 556 (7th Cir., 1995). *See also, Housing Opportunities Made Equal, Inc. v. Cincinnati Enquirer, Inc*., 943 F.2d 644, 646 (6th Cir., 1991.); *Ragin v. New York Times Co*., 923 F.2d 995, 1000 (2nd Cir., 1991) (cited with approval by *Tyus v. Robin Constr. Corp*., 1992 U.S. Dist. LEXIS 16736, *14 (D. Ill. 1992). 3604(c) has been described as a "strict liability" statute. Robert G. Schwemm, *Housing Discrimination; Law and Litigation* §15:8, 15-30 (West 7/2005).

"It does not matter whether the intent to discriminate is ultimately successful, . . . but simply that the intent to discriminate is expressed." *Mayers v. Ridley*, 465 F.2d 630, 653, (D.C. Cir., 1972) (per curiam, Wright, Bazelon and Robinson, JJ., concurring) "The statute does not ban only the most provocative and offensive expressions of discriminatory purpose, or statements indicating an outright refusal to sell or rent to persons in a protected class, but rather encompasses more subtle means of expressing such a purpose." 142 A.L.R. Fed. 1 §12.

## A. Danca's statements clearly indicate to an ordinary listener that African-Americans were dispreferred.

### 1. Danca's statements to the Kriemans and Brendan Holloran

During her tenure as Apartment Manager, Danca used the most vile racial language possible, sometimes directed towards Anthony Krieman and sometimes in the form of jokes. Plaintiffs' L.R. 56.1(b)(3)(B) Statement Of Additional Facts That Require The Denial Of Summary Judgment ("Plaintiffs' Statement") ¶¶ 7-15. It is hard to imagine statements that could more strongly indicate African-Americans are dispreferred.

### 2. Danca's statements to David Warren

Danca's statement to David Warren--"It's too late. The proceedings are going. They don't work and she has this biracial boy running around." (Plaintiffs' Statement ¶ 37) --clearly indicates a dispreference for biracial tenants.

In any event, whether statements such as calling Anthony a "nigger" or saying "she has this bi-racial boy running around" indicate a preference to an ordinary listener are questions for the finder of fact to decide. Therefore, summary judgment is not appropriate.

## B. Danca's discriminatory statements are evidence that other actions taken by her were taken for discriminatory motives

In their motion for summary judgment, the Defendants argue that "Danca's statement to Warren is not evidence of discriminatory conduct." However, the ultimate issue of

discriminatory intent is a question of fact, not a question of law. *Turgeon v. Premark Int'l, Inc.*, 87 F.3d 218, 220 (7th Cir.1996). The ultimate issue of discrimination is an "appropriate question for the jury." *Bronk v. Ineichen*, 54 F.3d 425, 430 (7th Cir., 1995).

Defendants curiously refrain from citing cases under the fair housing act for support for their proposition; instead choosing to rely solely on employment cases. Although courts have frequently looked to employment cases in interpreting the FHA, it is of less value in the present case because Title VII has no provision similar to §3604(c).

Defendants use these employment cases for the proposition that for discriminatory statements to be actionable, they must have some relationship with the decision in question or termination. That may well be in employment cases. However, §3604(c) does not focus on the reason for the discriminatory statement; instead, the focus is on whether or not the statement was made, not the intent behind the statement.

For example, Defendants cite *Shager v. UpJohn Co.*, 913 F. 2d 398, 402 (7th Cir. 1990) (age discrimination action against employer) to state that a slur is not in and of itself proof of actionable discrimination, even if repeated. However the next sentence reads "even so, it may be relevant evidence, with greater or less probative value depending on the precise character of the remark." *Upjohn* at 402.

## III. **<u>Defendants violated section 3604(a)</u>**

Defendants claim that Plaintiffs cannot establish a claim under Section 3604(a) of the FHA because the Defendants never denied the Kriemans housing. Defendants again fail to understand the Act. 3604(a) states:

> [I]t shall be unlawful-- (a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

42 USCS § 3604(a).

The HUD regulations promulgated under the Fair Housing Act specifically state that, "unlawful refusal to sell or rent or to negotiate for the sale or rental" under the Fair Housing Act prohibits, among other things, "evicting tenants because of their race." 24 C.F.R. 100.60. Failure to renew a lease also violates the FHA. *See, e.g., Texas v. Crest Asset Mgmt., Inc.*, 85 F. Supp. 2d 722, 731 (D. Tex. 2000), *Townline Assocs. v. Turner*, 1998 U.S. Dist. LEXIS 16830 (D. Pa. 1998).

There were numerous attempts to evict the Kriemans from their home. These included an attempt not to renew their lease, and an attempt to get them to vacate the apartment by the imposition of an unnecessary credit check.

Plaintiffs can prove a violation of 3604(a)[2] both directly and indirectly. Danca's Statement to David Warren is direct evidence that maintaining an eviction action against the Kriemans was done, at least in part, for a discriminatory reason: "It's too late. The proceedings are going…they don't work and she has this bi-racial boy running around." Plaintiffs' Statement, ¶ 37. Also, Cox testified at his deposition that the reason he considered Bridget Krieman a problem tenant "may have been her kid running causing some difficulty." (Plaintiffs' Statement, ¶¶30-31).

Plaintiffs can also show a violation 3604(a) using the McDonnell Douglass burden shifting analysis. "Under section 3604 a plaintiff establishes a prima facie case by showing that 1) she belongs to a minority; 2) the defendant was aware of it; 3) the plaintiff was ready and able to accept defendant's offer to rent; and 4) the defendant refused to deal with her. The burden then shifts to the defendant to show that he acted

[2] Defendants appear to have correctly decided that *Halprin v. Single Family Homes of Dearborn Park Ass'n*, 388 F.3d 327 (7th Cir., 2004) is not applicable to this proceeding. Plaintiffs agree that *Halprin* is not applicable because Halprin involved "post sale" allegations of discrimination between members of a homeowners association.

without any discriminatory intent. The defendant's evidence of a good reason for refusing to deal with the plaintiff must be devoid of circumstances from which it can be inferred that there was a real though subtle purpose of discrimination." *Hamilton v. Svatik*, 779 F.2d 383, 387 (7th Cir., 1985)(citations omitted) see also *Kane v. Oak Trust & Sav. Bank*, 1995 U.S. Dist. LEXIS 17120 (D. Ill. 1995)(applying the factors in *Hamilton* where landlord failed to renew tenants lease).

There is no dispute as to the first two factors. With respect to the first attempted non-renewal in 1996, the Kriemans wanted to continue to live in their home (and indeed did continue to do so), and Danca refused to deal with them, forcing the Kriemans to contact the management company and the owner, John Cox. The same reasoning applies to Danca's letter to the Kriemans telling them they either had to pay for and pass a credit check or vacate the apartment.

Assuming Defendants can articulate a legitimate non-discriminatory reason for their actions, a legitimate question of fact exists as to whether that reason was pretexual. Since racial discrimination can be inferred by name-calling. *See East-Miller v. Lake County Highway Dep't*, 421 F.3d 558, 563 (7th Cir., 2005), Danca's statements render her motive in taking the actions a question for the trier of fact to decide.

**IV. <u>Defendants Violated Section 3604(b)</u>**

Section 3604(b) makes it unlawful "To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. §3604(b).

Plaintiff can show that Defendants violated this section using the indirect method. To establish a prima facie case of discrimination under the FHA, Plaintiffs must show: 1)

Plaintiffs are members of a protected class; 2) Defendants knew this; 3) Plaintiffs were qualified for the particular term, condition, privilege, service or facility; and 4) Defendants refused to provide them. See, *Robinson v. Parkshore Coop*., 2002 U.S. Dist. LEXIS 11667 (D. Ill. 2002).

The first two factors are not in question. For factors 3 and 4, with respect to repairs being made in a timely manner (phone, air conditioning, water heater), Plaintiffs were certainly qualified to have those repairs made in a timely manner, and Defendants refused to provide them in a timely manner. With respect to the requirement that the Kriemans submit to a credit check to continue their tenancy[3], they were certainly "not" qualified (as they already had a valid lease), and Defendants "insisted" on applying it to them.

Under the *McDonnell-Douglass* test, the burden then shifts to the Defendants to articulate a legitimate non-discriminatory reason for the action. *Id.* Assuming that Defendants can meet that burden, then "the plaintiff has the opportunity to prove by a preponderance of the evidence that the nondiscriminatory justification asserted by the defendant is only a pretext for discrimination." *Id.*

There is ample evidence to show that the asserted justifications are pretextual. First and foremost, Danca's statements are a striking testimonial to her intent. *See Johnson v. Smith*, 878 F.Supp. 1150, 1154 (N.D.Ill.,1995) (Testimony that on several occasions Defendant expressed a personal animosity toward blacks, occasionally referring to them as "niggers," was evidence that defendants' conduct was racially motivated.) and *Byrd v. Brandeburg*, 922 F. Supp. 60, 63-64 (D. Ohio 1996) ("With

[3] These factors are phrased in the negative since it was an additional burden placed upon the Kriemans, rather than a withholding of services.

respect to the defendants' racial motive, the evidence demonstrated that one of the defendants expressed a personal animosity toward African-Americans, occasionally referred to them as "niggers" and stated that he did not like them living in the neighborhood."). Danca's statements alone require a denial of summary judgment.

Second, many of the actions taken were later rescinded, giving rise to the inference that they weren't well founded in the first place. Examples include the imposition of a credit check requirement that was later rescinded, (Plaintiffs' Statement ¶¶ 43, 46, 47), and the non-renewal of Plaintiffs' lease that was later rescinded. (Plaintiffs' Statement ¶ 35).

## V. <u>Defendants Violated §3617</u>

The Fair Housing Act makes it unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise of, or on account of his having exercised or enjoyed any right granted by sections 3603, 3604, 3605, or 3606 of the Fair Housing Act. 42 U.S.C. §3617. The Seventh Circuit interprets Section 3617 broadly as "prohibiting interference, coercion, or intimidation respecting any right granted by [Section 3604, 3605, and 3606]. *Looper Maintenance Serv. v. City of Indianapolis*, 197 F.3d 908, 912 (7th Cir. 1999). *Accord Bryant v Polston* 2000 U.S. Dist. Lexis 16368 (S. Dist. Ind., 2000).

To establish a violation of 3617, the plaintiff must show that "(1) she is a protected individual under the FHA[], (2) she was engaged in the exercise or enjoyment of [her] fair housing rights . . ., (3) Defendants were motivated in part by an intent to discriminate, or their conduct produced a disparate impact, and (4) Defendants coerced, threatened, intimidated, or interfered with Plaintiff on account of [her] protected activity under the FHA[]."East-Miller v. Lake County Highway Dep't, 421 F.3d 558, 563 (7th Cir., 2005)

In this case, factor 1 is not in dispute. The activities engaged in by Plaintiffs (factor 2)

include writing letters complaining of discrimination, contacting an attorney to enforce their fair housing rights who in turn contacted Defendants and filing a complaint with HUD. The motivation of Defendants (factor 3) is discussed at length in Sections II through V, *supra.* The coercion, threats intimidation and interference (factor 4) consisted of the racially discriminatory statements, and the attempts to deprive the Kriemans of their home and the enjoyment of their home.

## VI. Defendants Retaliated Against the Kriemans for Making Allegations of Racial Discrimination

HUD has interpreted §3617 to prohibit: "[r]etaliating against any person because that person has made a complaint, testified, assisted, or participated in any manner in a proceeding under the Fair Housing Act." 24 C.F.R. § 100.400(c)(5). *See Wilstein v San Tropai* (N.D. Ill. 1999), *Krueger v. Cuomo,* 115 F.3d 487 (7th Cir., 1997).

A retaliation claim under the Fair Housing Act requires proof of three elements: (1) that the plaintiff was engaged in an activity protected by the Fair Housing Act; (2) that the defendant took some adverse action against the plaintiff; and (3) that a causal connection existed between the protected activity and the adverse action. I, 1996 WL 418886 (H.U.D.A.L.J.) aff'd., *Krueger v. Cuomo,* 115 F.3d 487 (7th Cir., 1997)

The protected activities engaged in by Plaintiffs include: writing letters complaining of discrimination in violation of the FHA, contacting an attorney to enforce their rights under the FHA who in turn contacted Defendants, and filing a complaint with HUD. The adverse actions taken by Defendants include not renewing their lease, imposition of a credit check requirement, failure to make repairs in a timely manner, and towing Bridget's car.

The causal connection can be established by direct evidence. With respect to the phone repair, Danca told Bridget that she and the corporate office for the Crystal Lake Apartments

would not pay Ameritech to repair Bridget's phone line because of the "allegations" that Bridget made against Danca and the corporate office. (Statement of Additional Facts, ¶ 54). Also, Defendants admit that "after Morse investigated and considered to be frivolous allegations against Danca," (Respondents' Amended Statement, par. 78). Plaintiffs were required to put at least one repair request in writing. (Respondents' Amended Statement, par. 77). This direct evidence also constitutes circumstantial evidence that other actions taken by Defendants were connected to protected activity.

## VII. <u>Hostile environment</u>

The Seventh Circuit recognizes a hostile environment cause of action in the housing context. *DiCenso v. Cisneros*, 96 F.3d 1004 (7th Cir., 1996). In analyzing a hostile environment claim in the housing context, the Seventh Circuit uses the analysis of Title VII of the Civil Rights Act of 1964 which allows for hostile environment claims in the work environment. *DiCenso* at 1008.

In order to establish a hostile environment claim the offensive behavior must unreasonably interfere with the use and enjoyment of the premises. *Id.* Whether an environment is hostile can be determined *only* by looking at *all* the circumstances and *may* include consideration of the following factors: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or mere offensive utterance; and whether it unreasonably interfered with an employee's work performance." *Id.*

Defendants argue that Danca's "infrequent inappropriate behavior" was not frequent enough to rise to the level of creating a hostile environment. (Defendant's Memorandum, page 17). Defendants mischaracterize the frequency of Danca's statements and over-rely on the *DiCenso* court's discussion of the frequency factor.

Defendants refer to frequency as a "key element." On the contrary, the *DiCenso* court went out of its way to point out that frequency is only a *factor* much less a "key element." *Id*. The court held that it considered the "totality of the circumstances," emphasizing "[w]e stress in closing that our decision today should not be read as giving landlords one free chance to harass their tenants…nor do we hold that a single incident of harassment never will support an actionable claim." *DiCenso* at 1009.

Defendants also refer to Danca's statements as "sporadic" in arguing that they are not sufficiently frequent. (Defendant's Memorandum, page 17). Defendants mischaracterize the court's analysis in *DiCenso*. The court held "**sporadic** behavior, if sufficiently abusive, may support a [discrimination] claim…." *Id.* at 1008.

In *DiCenso* there was one, and only one, incident of sexual harassment in which the landlord stroked the tenants arm and using sexual innuendo suggested that the plaintiff could pay her rent in "other ways." *Id.* at 1006,1009. Here, Danca made discriminatory statements many times in 1996, and again in 2001. (Plaintiffs' Statement, ¶¶ 7-15, 37).

Years of statements referring to Anthony in a racially disparaging and belittling manner is hardly comparable to *one* incident in which a landlord touched a tenant's arm and made a sexual innuendo. Is there anything more hostile than hearing ones only child (or only grand-child) referred to as a "nigger?"

Furthermore, Danca and EPM's conduct contributed to an abusive and hostile environment. The Kriemans were subject to two evictions, two attempts not to renew their lease, failure to make repairs to their apartment, and having Bridget's car towed. In addition to Danca's statements and conduct, EPM's failure to conduct a proper investigation of Danca's abusive statements only exacerbated a hostile environment.

## VIII. Statute of Limitations

In their Motion for Summary Judgment, Defendants correctly state that a statute of limitations may be tolled by a "continuing violation" of the FHA.[4] The Supreme Court has held that continuing violations of the Fair Housing Act should be treated differently than a single incident. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380 (1982). In *Havens* the Court said, "where a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely," *Id.* When Congress amended the FHA in 1988, it "clarified its intent to allow parties to recover for earlier acts under the FHA that constitute part of an on-going pattern or practice." *Wallace v. Chi. Hous. Auth., 321 F. Supp. 2d 968, 973* (N. Dist.. Ill., 2004)

Further, "where a plaintiff properly alleges a pattern of conduct that violates the FHA, acts that occur prior to the limitations period are actionable as long as they are part of the alleged pattern." *Wallace v. Chi. Hous. Auth.*, 321 F. Supp. 2d 968, 973 (N.D. Ill. 2004). If there is a continuing violation, not only can a cause of action include allegations of discrimination occurring before the statute of limitations period, but also, "a plaintiff can recover for *damages* that preceded the limitations period if they stem from a persistent process of illegal discrimination." *Tyus v. Urban Search Mgmt.*, 102 F.3d 256, 265 (7th Cir., 1996) [Emphasis added]. "When a continuing violation is alleged, the rule in Illinois is that the statute of limitations begins to run from the date of the last injury or tortious act." *Wolf v. City of Chicago Heights*, 828 F. Supp. 520, 524 (N.D.Ill. 1993).

The only conduct that is outside of the two year statute (as tolled while the Complaint was filed with HUD), were Danca's statements and actions in 1996. Danca made discriminatory statements both within the limitations period (Danca's statement to Warren) and outside of the

[4] The statute of limitations is also tolled while a complaint is filed at HUD. *See* 42 U.S.C. §3613(b).

limitations period (Danca's statements heard by the Kriemans and Brendan Holloran). Defendants' argument is premised upon the fact that Danca seems not to have been heard making discriminatory statements for a five-year period. After the Kriemans and their attorneys complained about the discrimination, the comments and the attempts to remove them stopped for a while. Defendants apparently felt it was "not worth fighting it now" and decided that "going forward [they would] need to watch." After a period of time, she began again to try to get rid of the Kriemans and treated them differently from other tenants.

The Plaintiffs have sufficient evidence to demonstrate that there is a continuous violation in this case. Therefore, none of defendants' discriminatory acts, even those more than two years prior to the suit are barred by the statute of limitations. Based on the Plaintiffs allegations and the evidence, at a minimum, there is a genuine issue of material fact regarding whether there is a continuing violation of Fair Housing Act sufficient to bring all acts within the scope of the statute of limitations.

## IX. <u>Summary Judgment should be denied because Plaintiffs' claims are not barred by *res judicata* or the Rooker-Feldman doctrine</u>

Defendants state in their Memorandum that, "Integral to each of the Krieman's claims under the FHA is that they were "forced to move," and defendants failed to return their security deposit. (Defendants' Memorandum at 14) Of course, each of Plaintiffs' claims represents a separate and distinct cause of action, and do not rely upon them being forced to move or being denied the return of their security deposit. At most, under res judicata, what Defendants would be entitled to is to strike paragraphs 22(f) and 24 of Plaintiffs' complaint.

### A. <u>Plaintiffs claims are not barred by Res Judicata</u>

Plaintiffs' claim that they were forced to move is not barred by the doctrine of res judicata. Res judicata provides that a final judgment on the merits rendered by a court of

competent jurisdiction bars any future actions between the same parties or their privies on the same cause of action. *Caruso v. City of Northlake*, 1998 U.S. Dist. LEXIS 4683 (N.D. Ill. Mar. 30, 1998). The essential elements of the doctrine of *res judicata* are (1) an identity of parties or their privies in the two suits; (2) an identity of causes of action in the earlier and in the later suit; and (3) a final judgment on the merits in the earlier suit. *Torres v. Rebarchak* 814 F.2d 1219, 1222 (7th Cir., 1987) (*citing Pfeiffer v. William Wrigley Jr. Co*., 139 Ill.App.3d 320, 322, 92 Ill.Dec. 332, 334, 484 N.E.2d 1187, 1189 (1st Dist.1985); *Lee v. City of Peoria*, 685 F.2d 196, 199 (7th Cir.1982)). The party asserting the defense of *res judicata* has the burden of showing with clarity and certainty what was determined by the prior judgment. *Id.* Any doubt as to what was decided in the earlier action must be resolved against an application of *res judicata*. *Id.*

**1. At most, there is only partial identity of the parties**

Res Judicata requires identity of the parties. However, Anthony Krieman was not a named party in the prior eviction proceedings, and neither was Defendant Dottie Danca. So to the extent that Res Judicata even applies, it would not apply to Anthony Krieman at all, or to claims the other two Plaintiffs have against the Defendants not named in the prior action.

**2. The eviction action was not identical in substance to Plaintiffs' Fair Housing Act claims.**

The state court action relied upon by Defendants consisted of an eviction proceeding seeking possession of the apartment the Kriemans occupied and unpaid rent. The instant case involves neither: Plaintiffs do not seek a judgment that they are entitled to possession, nor do they seek damages in the form of rent paid.

**3. There was no final judgment on the merits in the eviction action.**

Defendants cite *Elliot v. LRSL Enterprises, Inc.*, 226 Ill. App. 3d 724, 728, 589 N.E.2d 1074 (2nd Dist. 1992) for the proposition that "an order entered by consent of the parties operates

to the same extent for purposes of *res judicata* as a judgment entered after consent [sic], because it is conclusive with respect to the matters settled by the order or judgment."

However, the Court in Elliot went on to "determine that *res judicata* does not apply beyond the specific language of the agreed order." *Elliot* at 1077. A consent judgment does not involve a contest or decision on the merits, but instead it is a contractual agreement of the parties. *Elliot v. LRSL Enterprises, Inc., 226 Ill. App. 3d 724, 728, 589 N.E.2d 1074 (2nd Dist. 1992).* Even though the intention of the parties is to be determined from the final agreement, previous agreements and negotiations; circumstances may also be considered in determining the meaning of specific words and clauses. *Elliot v. LRSL Enterprises, Inc., 226 Ill. App. 3d 724, 728, 589 N.E.2d 1074 (2nd Dist. 1992).* The order must be interpreted in its entirety, considering all facts and circumstances surrounding its execution, as well as all pleadings and motions from which it emanates. *Id.* The Court in *Elliot* found it necessary to interpret the language of the order.

Defendants' Memorandum is misleading as to the language of the order. It states, "Plaintiffs agreed, pursuant to the terms of agreed consent order entered on March 26, 2003 to the entry of a judgment against them for all amounts due and owing EPM." However, what the order[5] actually says is, "That should Defendant fail to comply with para above[6] the Plaintiffs shall be entitled to an immediate order of Possession and judgment for all monies still due an owing." (Morse Aff., Exhibit 13). When Complainants were unable to pay; they agreed on April 23, 2003 to entry of judgment for immediate possession.

Neither of the two agreed orders in the state court eviction proceeding addressed issues of racial discrimination or return of a security deposit, though both orders were drafted by counsel

[5] Though the Agreed Order, drafted by counsel for Crystal Lake Apartments and Equity Property Management is barely legible, this paragraph seems to be clear.
[6] The "para above" deals with payment of fees and rent.

for EPM and Crystal Lake Apartments.

**C. Plaintiffs claims are not barred by the Rooker-Feldman doctrine**

Defendants' Memorandum fails to address the Supreme Court's recent ruling on the Rooker-Feldman doctrine. "The Rooker- Feldman doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 125 S. Ct. 1517, 1521-1522 (U.S. 2005).

Plaintiffs accepted the state court judgment, and moved out pursuant to the order for possession. In the present case, they do not seek review of the order for possession and do not seek to overturn the money judgment. The instant claims present a new cause of action under federal law.

Respectfully submitted,

BRIDGET KRIEMAN, DARLENE KRIEMAN and ANTHONY KRIEMAN

By:

s/ Joseph R. Butler
One of their attorneys

The John Marshall Law School
Fair Housing Legal Clinic
28 E. Jackson Blvd. Suite 500
Chicago, Illinois 60604
(312) 786-2267
Attorney No. 6226654